**UNITED STATES DISTRICT COURT FOR THE**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOMEFED VILLAGE III MASTER, LLC;<br><br>　　　　Plaintiff,<br>　vs.<br>OTAY LANDFILL, INC et al;<br><br>　　　　Defendants. | Case No. **3:20-cv-0784-L-JLB**<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT RECYCLING INTERNATIONAL INC.'s MOTION TO STRIKE EXPERT REPORT [ECF NO. 92]**<br><br>**(2) DENYING PLAINTIFFS' EX PARTE MOTION TO FILE A SUR-REPLY [ECF NO. 113]** |

　　　Pending before the Court is Defendant Recycling International Inc., dba LKQ's ("LKQ") Motion for Sanction and to Strike Expert Report, [ECF No. 92] and Plaintiff's Ex Parte Motion to File a Sur-Reply [ECF No. 113.]. Plaintiff HomeFed filed a Response in Opposition to LKQ's Motion to Strike, and LKQ filed a Response in Opposition to Plaintiff's Motion to File Sur-Reply. [ECF Nos. 100, 114.] LKQ filed a Reply in support of its Motion to Strike [ECF No. 109].

　　　The matter is submitted on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, the Motions are DENIED.

//

1

I. FACTUAL BACKGROUND

HomeFed, a property developer, brought suit against its surrounding businesses, including Defendant LKQ, for contamination that it encountered during the development of its property, Village III ("Village 3"). Among its claims, HomeFed asserted that LKQ's operation caused the groundwater contamination that it encountered while installing a roadside stormwater trench on the west side of its development near the border with the LKQ facility ("Stormwater Trench").

The LKQ Facility consists of six contiguous parcels of industrial property totaling approximately 31.56 acres, located along the south side of Energy Way (800 Energy Way - 894 Energy Way) in Chula Vista. The easternmost parcel is adjacent to Village 3. The LKQ Facility has been commercially used for automobile salvage, dismantling, and sale of used automobile parts. The automobile dismantling operations at the LKQ Facility include: draining fuel, oil, lubricants, and other fluids from vehicles; the storage, transport, and disposal of these fluids; cutting, torching, and disassembling vehicle and vehicle parts components that contain or have been exposed to these fluids and storing or transporting those parts or components; and servicing and maintenance of vehicles.

In April 2017, Plaintiff engaged in completing construction of the roadbed improvements for the northern extension of Heritage Road to facilitate public access to Village 3. In late April 2017, during final trench excavation activities for the main Heritage Road storm drain along the roadway, in the area north of Main Street, Plaintiff's contractors discovered for the first time what appeared to be perched groundwater that produced intense petroleum hydrocarbon odors and substantial quantities of petroleum products emanating from the bottom of the storm drain trench in the groundwater.

Sampling of the perched groundwater indicated the presence of excessive levels of petroleum hydrocarbon impacts to the groundwater, including diesel, gasoline, and

volatile organic compounds (VOCs) including benzene, methyl tert-butyl ether (MTBE), and toluene, and xylene.

Plaintiff implemented emergency measures to contain and handle the impacted groundwater, utilizing sumps and cutoff walls that were installed in the storm drain trench system to mitigate impacted groundwater migration through the gravel backfill of the trench so as to prevent the impacted groundwater from flowing into the Otay River Valley. Three sumps were installed within the containment area, and a fourth sump was installed down gradient.

The sumps allow monitoring of the groundwater within the storm drain trench backfill, as well as providing the means for Plaintiff to pump the contaminated groundwater out of the containment area and dispose of it in an environmentally safe manner. To mitigate potential downgradient migration of petroleum-hydrocarbon-impacted groundwater via the storm drain trench, approximately 577,100 gallons of groundwater were extracted from the four Heritage Road sumps from May 2017 to February 2019. The pumped groundwater was transported offsite to an approved disposal facility. Plaintiff is informed and believes the impact to the groundwater and soil on and under Village 3 with contaminants, including petroleum hydrocarbons and VOCs, was caused in whole or in part by the migration of these contaminants from the Otay Landfill and the LKQ Facility.

II.   RELEVANT PROCEDURAL BACKGROUND

On April 24, 2020, Plaintiff HomeFed Village III filed the original complaint in this action seeking declaratory and injunctive relief, or damages, for Defendants violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1), and common law theories of public nuisance, private nuisance, and trespass. [ECF No. 1.] Plaintiff seeks to recover costs and damages that Plaintiff has incurred or will incur in order to respond to impacts to groundwater, soil, and soil gas on Village 3, by solid and/or hazardous wastes and the constituents thereof, including petroleum hydrocarbons, volatile organic compounds (VOCs), and methane. *Id.*

On May 11, 2020, Plaintiff filed a First Amended Complaint. (FAC [ECF No. 4.]) Defendant LKQ filed a motion to dismiss on July 13, 2020, which was deemed moot by a subsequent joint motion and order striking portions of the FAC. Plaintiff was allowed to amend the complaint and filed a Second Amended Complaint ("SAC") on August 6, 2020. [ECF No. 18.]

Plaintiff named hydrogeologist Gary McCue as an expert and on December 3, 2021, McCue submitted his Original Report in support of HomeFed's claim against LKQ. On January 3, 2022, LKQ's expert witness, Mr. Sin Senh, submitted the Senh Rebuttal Report to the McCue Original Report that included, among other things, a hydrogeological analysis of groundwater flow. (Gee Decl., ¶4, Ex. 2 at 5-9, 12.)

After extensive discovery, Defendant LKQ sought leave of Court to file an Amended Answer to Assert Crossclaims against OLI for equitable indemnity and contribution based on the assertion that contamination at the HomeFed site was due to OLI and not LKQ's actions. [ECF No. 57.] On March 7, 2022, the Court granted LKQ's motion to file an amended answer. [ECF No. 73.] On March 15, 2022, Defendant LKQ filed an amended Answer. [ECF No. 76.] On April 8, 2022, LKQ served the Senh Crossclaim Report to support its crossclaims against OLI, in which Senh opined that the OLI landfill was the primary source of groundwater contamination found at the HomeFed site.

On April 14, 2022, HomeFed sought Court authorization to submit a rebuttal report to the Senh Crossclaim Report, which LKQ opposed on the basis that (1) HomeFed did not have a groundwater contamination claim against OLI and (2) HomeFed counsel would not commit to limiting its expert rebuttal report to the opinions contained in the Senh Crossclaim Report. The Court amended the pre-trial schedule and permitted HomeFed to submit an expert rebuttal report limited to responding to the Senh Crossclaim Report. (ECF No. 85.)

On June 10, 2022, HomeFed served the McCue Sur-Rebuttal Report, which is the subject of the current Motion to Strike, and which contained two opinions:

4

> [Opinion 1] The Otay Landfill is not the source of groundwater contamination detected on Site in Heritage Road and in groundwater water monitoring wells located between Heritage Road and the LKQ facility, nor is the Otay Landfill the source of groundwater contamination detected on the LKQ facility.
>
> . . .
>
> [Opinion 2] The LKQ facility is the source of the LNAPL detected in the storm drain trench in Heritage Road, is the source of the fuel contamination detected in soil on Site adjacent to the eastern property boundary of the LKQ facility, and is the source of the perched groundwater fuel contamination detected on Site in Heritage Road, in groundwater monitoring wells located between Heritage Road and the LKQ facility, and on the LKQ facility.

(Gee Decl., ¶6, Ex. 4 at 3, 17.)

On August 8, 2022, Defendant LKQ filed the current Motion to Strike Expert Report seeking to have Opinion 2 stricken. (Motion [ECF No. 92.] On August 22, 2022, Plaintiff HomeFed filed a Response in Opposition to the Motion to Strike. (Oppo. [ECF No. 100.] On August 29, 2022, Defendant LKQ filed a Reply. [ECF No. 109.]

On August 31, 2022, Plaintiff HomeFed filed an Ex Parte Motion for Leave to File a Sur-Reply to LKQ's Motion to Strike. [ECF No. 113.] On September 1, 2022, Defendant LKQ filed a Response in Opposition. [ECF No. 114.]

### III.   LEGAL STANDARD

Rule 26 provides that an expert "report must contain … a complete statement of all opinions the witness will express and the basis and reasons for them." (Fed. R. Civ. P. 26(a)(2)(B)(i).) Conversely, rebuttal reports are "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26 (a)(2)(D)(ii). Courts have discretion to strike expert reports that do not comply with Rule 26. *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980); *Cadence Pharmaceuticals, Inc. v. Fresenius Kabi USA, LLC*, 2014 WL 12139076, at *2 (S.D. Cal. 2014).

//
//

IV. DISCUSSION

*A. Opinion 2 of McCue Sur-Rebuttal Report*

LKQ asks the Court to prohibit HomeFed from introducing Opinion 2 of the McCue Rebuttal Report and strike it as either (1) an expert opinion in support of HomeFed's claim against LKQ that should have been included among its initial December 3, 2021 expert disclosures or (2) an unauthorized sur-rebuttal opinion to the rebuttal positions on LKQ's direct liability contained in the Senh Rebuttal Report. (Mot. at 6). According to LKQ, the second opinion added new material which supports its original argument that the LKQ facility is the source of groundwater contamination found at the HomeFed site, but Senh's Crossclaim Report was directed solely at evidence showing OLI was responsible for the contamination at the Village 3 site. (Mot at 6). LKQ contends that the Senh Crossclaim Report and McCue Sur-Rebuttal Report do not address the "same subject matter" because McCue's Opinion 2 is focused exclusively on supporting Plaintiff HomeFed's case in chief against LKQ, while Senh's Crossclaim Report is focused solely on LKQ's crossclaims against OLI. (*Id*. at 9-10). HomeFed's violation of Rule 26 in this manner has substantially prejudiced LKQ, therefore, LKQ argues that Rule 37 sanctions are warranted. (Mot. at 13).

In response, Plaintiff HomeFed contends that McCue's rebuttal opinion is the converse of Senh's opinion because Senh opines the contaminated groundwater at the LKQ facility is not the source of the contamination on Village 3, and McCue opines that it is. (Oppo. at 9 [ECF No. 100-1.]) Plaintiff argues that McCue's Opinion 2 rebuts Senh's opinion that "the perched groundwater contamination encountered at the LKQ property is not the source of contamination detected at the Village 3 Site" by illustrating that there is a history of surface discharges of oil and vehicle fluids at LKQ. (Id.) Plaintiff further contends that Senh's observations about groundwater flow and a sloped clay subsurface "are not determinative because LNAPL released on the ground surface will migrate downwards and move laterally through the vadose zone, independent of the groundwater flow."  (Oppo. at 11-12). Plaintiff argues that striking McCue's

6

Opinion 2 would prejudice Plaintiff because LKQ knew Senh was going to opine that OLI was the source of contamination but did not disclose Senh's opinions in support of that defense, instead designating Senh as a rebuttal expert which immunized his opinions from any direct response from any opposing expert. (*Id*. at 14).

The substance of the expert reports illustrates that McCue's Rebuttal Report is responsive to Senh's Report. In McCue's original expert report, he opined that LKQ was the source of contaminated soil, groundwater, and soil gas on the Village 3 Site. (Gee Dec. ¶ 3; Ex 1 at 9).[1] That opinion rested on inspection agency documentation that LKQ discharged waste from leaking vehicles in the dismantling process (*Id*. at 9) and groundwater monitoring which indicated concentrations of MTBE, BTEX and total VOC concentrations which align with the contaminated soil. (*Id*.) McCue explained the reason for his conclusion:

> As discussed in the Background Section, TRC conducted a limited assessment of soil and groundwater on the LKQ facility. Five shallow soil borings were advanced to depths of 0.8 to 5 fbg (HAB-01, HAB-02, HAB-04, HAB-05 and HAB-06); and one groundwater monitoring wells, SDR-02, was drilled and installed (Figure 2). Soil and groundwater sampling was conducted, and the samples were variously tested for GRO, DRO, and VOCs (Tables 4 and 5).
>
> Contaminated soil was encountered from ground surface, into groundwater at approximately X fbg, and to 50 fbg, the bottom of the boring. *This indicates the LKQ facility is the source of contamination encountered in groundwater*. Light Non-Aqueous Phase Liquids (LNAPLs) generally referred to as free product, was encountered in the bore hole during sampling.
>
> The soil and groundwater data for the LKQ borings is of similar type as that seen in the Heritage Road sumps and the soil borings and wells drilled adjacent to the LKQ property. All the locations are contaminated with fuel hydrocarbons including BTEX, fuel oxygenates including MTBE, and some solvent chemicals (Tables 1, 2, 3, 4a and 5). *TRC successfully traced the contamination in the storm drain trench and sumps in Heritage Road to the property boundary of LKQ and eventually to the LKQ property*.

(Ex. 1 at 10-11)(emphasis added).

In response, Senh opined in his January 3, 2022, Rebuttal Opinion that "Contamination Found at the LKQ Property is Not the Source of Contamination

---

[1] All references to page numbers are to ECF generated numbers on docket 92-2.

7

Detected at the Village 3 Site." (Gee Dec. ¶ 4; Ex. 2 at 14). The conclusion is based on the following lines of evidence: (1) regional geology and hydrology which indicates that the groundwater flow is southwest toward the Pacific Ocean (Ex. 2 at 19); (2) local hydrology indicates that the Village 3 site is upgradient of the LKQ property, thus "subsurface contamination would flow from the Village 3 Site to the LKQ property" (*Id*. at 22); and (3) the presence of historic preferential pathways, known as paleochannels, which generally flow from north-south indicate that "contamination from areas north of the Village 3 Site, such as the landfill [OLI], migrating downgradient could eventually be detected in the area of Sump 1." (*Id*.)

After LKQ filed crossclaims against OLI, Senh submitted his Expert Report in Support of LKQ's Crossclaim against OLI and opined that the Otay Landfill (OLI) is the primary source of contamination at the Village 3 site based on (1) local and regional geology/hydrogeology factors, (2) pre-existing environmental conditions at OLI which indicate it has contaminated soil gas and groundwater beneath the Project Site, (3) prior environmental enforcement actions against OLI which indicate they are not in compliance with local, state and federal requirements, and (4) preferential flow pathways which create a flow pathway from an upgradient area such as the Otay Landfill migrating downgradient to the Village 3 site. (Gee Dec. at ¶ 5, Ex 3 at 51-54).

McCue's June 10, 2022, Rebuttal to Senh's Expert Opinion, and the subject of this Motion, posits two rebuttal opinions. First, McCue claims that OLI is not the source of groundwater contamination found at Village 3 site nor is it the source of groundwater contamination located at LKQ based on geologic and hydrogeologic data. (Gee Dec. ¶ 6; Ex 4 at 61, 64.) Second, Opinion 2 claims that OLI is not the source of the contamination because (1) LKQ is the source of the LNAPL detected in the storm drain trench, (1) LKQ is the source of the fuel contamination detected in soil on the Village 3 site, and (3) LKQ is the source of the perched groundwater fuel contamination detected in groundwater monitoring wells. (Ex. 4 at 78.) McCue claims that shallow

soil contamination is from lateral migration through the vadose zone from the LKQ facility to the Site because there are not other potential sources in the area. (*Id*. at 89).

Rule 26(a)(2)(C)(iii) allows the admission of rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified" by the initial expert witness report. *Van Osten v. Home Depot, U.S.A.*, 2020 WL 7427212, * 3 (S.D. Cal. 2020); *Lindner v. Meadow Gold Dairies, Inc*., 249 F.R.D. 625, 636 (D.Haw.2008). "A rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert" report. *Lindner,* 249 F.R.D. at 636.

Opinion 2 is proper rebuttal because it refutes the contention that OLI is the source of contamination by illustrating that LKQ and not OLI is the source of the contamination on the Village 3 property. Indeed, McCue states: "As discussed in Rebuttal Opinion 1 in this report, the Otay Landfill is not the source of fuel hydrocarbons detected in LKQ well SDR-02, wells MW-HR02 and MW-HR-04, and the sumps in part because no fuel hydrocarbon concentrations in the landfill groundwater or leachate could produce the concentrations observed in the area of the LKQ facility." (Ex. 4 at 83). McCue supports this conclusion by illustrating that the fuel hydrocarbons decrease in the groundwater samples as they move away from the LKQ site, indicating that OLI could not be the source of contamination. By pointing to an alternate source of the contamination, McCue refutes Senh's report that OLI is the source of contamination. *See generally, Biomet Orthopedics,, Inc., v. Tact Med. Instruments, Inc.,* 2004 WL 5499504, at *2 (N.D. Ind. Apr. 7, 2004).

Though LKQ claims that McCue's Rebuttal Report must be stricken because it is not based on any new information, the discussion and factual support for McCue's opinion regarding the fate and transport of LNAPL adds additional information to refute Senh's conclusion that LNAPL migrates down to groundwater and then flows in the general direction of groundwater. (Oppo. at 10).

LKQ argues that the Senh Crossclaim report and the McCue Rebuttal report do not address the "same subject matter" as required under Rule 26 because the Senh Crossclaim Report is not intended to challenge McCue's opinion that LKQ is the source of groundwater contamination, but instead is intended to support the Crossclaim against OLI. Though the phrase "same subject matter" must not be read too broadly, McCue's Opinion 2 explaining why LKQ and not OLI is the source of Village 3 soil contamination does not expand the scope to "encompass any possible topic that relates to the subject matter at issue" but instead concerns the same geologic, hydrogeological, and flow pathway evidence as in LKQ's crossclaim against OLI. *See generally People v. Kinder Morgan Energy Partners, L.P.*, 159 F.Supp.3d 1182, 1192-93 (S.D. Cal. Feb. 2, 2016). [2]

For the above reasons, McCue's Rebuttal Report qualifies as an expert rebuttal opinion under Rule 26(a)(2) and is not an improper Sur-Rebuttal Report to Senh's Rebuttal Report. Accordingly, Defendant's motion to strike is denied. Because there is no Rule 26 violation, Defendant's request for sanctions under Rule 37 is denied

### B. Plaintiff's Ex Parte Application for Leave to File Sur-Reply

Plaintiff argues that they should be allowed to file a Sur-Reply because LKQ included additional evidence with its Reply brief, specifically a declaration by LKQ's counsel Byron Gee and two attached exhibits. (Ex Parte at 2 [ECF No. 113-1.]) However, Plaintiff has not cited, nor has the Court located, any binding authority to support the position that the submission of additional evidence in a reply brief entitles the opposing party the right to file a sur-reply. Additionally, Plaintiff filed the substance

---

[2] Both parties claim they have been prejudiced: HomeFed by Senh's designation as a rebuttal expert thus immunizing him from a direct response from opposing expert, and LKQ argues that if the information contained in Opinion 2 had been in McCue's original December 3, 2021, Report, LKQ would have been able to respond to that opinion in the Senh Rebuttal Report on January 3, 2022, but because it did not, leaving LKQ with no opportunity to respond to the expert opinion. Because the Court finds that McCue's Rebuttal Report is proper under Rule 26 the Court declines to address the prejudice arguments.

of the Sur-Reply in the Ex Parte Motion, rather than waiting for the Court's response regarding whether leave was granted. For the above reasons, Plaintiff's request to file a Sur-Reply is denied.

V. **CONCLUSION AND ORDER**

For the foregoing reasons, the Court and **DENIES** Defendant Recycling International's Motion to Strike **DENIES** Plaintiff's Motion to File a Sur-Reply.

IT IS SO ORDERED.

Dated: June 16, 2023

Hon. M. James Lorenz
United States District Judge