UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMEFED VILLAGE III MASTER, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>OTAY LANDFILL, INC., et al.,<br><br>                              Defendants. | Case No.: 20-cv-0784-AGS-JLB<br><br>**ORDER ON MOTIONS TO BIFURCATE (ECF 165, 166, 168)** |

    Plaintiff's amended complaint includes one purely equitable claim, which is normally tried to a judge alone, and two state-law causes of action, which require a jury trial. Defendants move to bifurcate these claims and try the equitable claim—or at least an element of it—first in a separate bench trial. The key question is whether this proposal comports with the Seventh Amendment.

    The Seventh Amendment "preserves the right to trial by jury of all legal claims," while no such right "exists for equitable claims." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001); *see also Teutscher v. Woodson*, 835 F.3d 936, 943 (9th Cir. 2016) (according Seventh Amendment jury-trial right to "state law claims" when "the right in question and the remedies sought" are "legal in nature"). And when the "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974). To ensure the jury-trial right is not diminished, if a case's "legal and equitable claims turn on common issues of fact," a "jury's determination of the legal claims must occur prior to any final court determination of the equitable claims." *Teutscher*, 835 F.3d at 944 (cleaned up) (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962)).

    So, do the legal and equitable claims here turn on common issues of fact? Defendants contend, at a minimum, that one equitable issue is entirely separate from the state-law claims: the "imminent and substantial endangerment" element of plaintiff's Resource Conservation and Recovery Act cause of action. They argue that this equitable RCRA

claim touches on whether there "is currently a 'substantial or serious' threat of *future* harm," while the state-law claims focus on "liability and damages" for *past* harm. (ECF 165-1, at 8 (emphasis added); *see also* ECF 166-1, at 8.)

But the facts regarding past contamination may also be relevant to determining if an imminent and substantial risk of harm exists. For example, for imminent-and-substantial-endangerment purposes, one court considered evidence that "the environment has *already* been degraded significantly by the contaminants' invasion" and that the contaminants "migrated vertically and laterally in the subsurface, and may *continue* to so migrate." *Lincoln Props., Ltd. v. Higgins*, No. CIV. S-91-760DFL/GGH, 1993 WL 217429, at *13 (E.D. Cal. Jan. 21, 1993) (emphasis added). Similarly, other courts have relied on the existence of "pathways by which hazardous waste may endanger the public." *Occidental Rsch. Corp. v. Tamkin*, No. CV 17-4621-R, 2018 WL 1941933, at *2 (C.D. Cal. Apr. 2, 2018); *cf. City of Fresno v. United States*, 709 F. Supp. 2d 934, 943 (E.D. Cal. 2010) (granting summary judgment in part because plaintiff did not "provide any evidence . . . that there were realistic pathways of exposure"). Plaintiff has already argued this type of evidence at summary judgment to support its RCRA claim, and it may do so again at trial. (ECF 95-1, at 28 ("[T]he past and ongoing disposals of oil, petroleum, and vehicle fluids . . . has caused these contaminants to absorb in soil and migrate downward to the perched water table . . . contaminating the water."); *id.* ("[T]he contaminated water has a direct pathway to the Otay River."); *id.* at 29 ("There are subsurface preferential pathways . . . that allow the methane to move freely through soil gas.").)

This evidence overlaps with plaintiff's state-law tort claims. For example, plaintiff argued in its opposition to summary judgment on those claims that "oil, gasoline, and vehicle fluids are routinely discharged," "[t]hese contaminants can be absorbed into the soil," and "[w]hen oil or fuel hydrocarbons are absorbed into soil, they migrate downwards and laterally." (ECF 115-1, at 20–21.) Plaintiff also noted, regarding its state-law nuisance claim, that "groundwater contamination . . . has a preferential pathway to contaminate surface waters." (*Id.*) Any factual finding the Court may make in a bench trial regarding

this evidence would strip plaintiff of its right to have a jury make those same findings, violating the Seventh Amendment.

At all events, on a motion to bifurcate, the moving party has the burden of showing that separate trials are warranted. *See United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986) ("The defendant has the burden of proving that the joint trial was manifestly prejudicial."). And this Court has "broad discretion" in deciding whether to bifurcate. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004); *see also* Fed. R. Civ. P. 42(b). Even if there were no Seventh Amendment concerns, the defense has not carried that burden. The defense argues that the jury may be confused or prejudiced by mixing evidence of "alleged *future* risk" regarding the RCRA claim with "evidence of *past* harm," as only the latter is relevant to the jury's determination. (*See* ECF 165-1, at 16.) But defendants also suggest that the RCRA evidence is rather brief. According to the defense, plaintiff "has at most a single expert" to opine on the "imminent and substantial endangerment" issue, and his testimony "would perhaps take half a day." (ECF 176, at 7–8.) And, at any rate, the defense contends that the "RCRA claim is now moot" because of comprehensive remediation efforts. (ECF 175, at 4 (emphasis removed).) Based on the current record, the Court believes that any confusion or prejudice can be safely addressed through proper limiting instructions or excusing the jury for testimony that pertains only to future harm.

The Court also disagrees with the defense about whether separate trials would save judicial resources. For this argument, the defense relies on *Torres v. Igdaloff*, No. 2:17-cv-04059-MCS-JEM, 2021 WL 4527748 (C.D. Cal. July 19, 2021), a case in which it was undisputed that the equitable claims were "separable from the jury triable claims," and the judge found that adjudicating the equitable claims first "may render a jury trial on the remaining claims unnecessary." *Id*. at *2. Unlike *Torres*, the parties here vigorously dispute whether the RCRA cause of action is separable—this Court holds that it is not—and resolution of that claim seems far less likely to avoid a second trial. The *Torres* court believed a separate equities trial might be dispositive due to "the magnitude of the costs to

be allocated under the statutory [equitable] claims." *Id*. The defense has made no similar argument about the costs here, so it is less likely that bifurcation would lead to a settlement of the other claims. In fact, if the defense defeats the RCRA claim, it urges this Court to "decline to exercise supplemental jurisdiction" over the state-law claims. (ECF 166-1, at 10.) But it is not clear how remanding this case to state court and restarting the state-law litigation would serve the interests of judicial economy. After dealing with all the pretrial litigation, including summary-judgment motions, this Court is familiar with the facts and prepared to try all claims. Another judge would have to start from zero.

For all these reasons, defendants' motions to bifurcate are **DENIED**.

Dated:  April 24, 2024

                                               _____
                                               Hon. Andrew G. Schopler
                                               United States District Judge

4

20-cv-0784-AGS-JLB